UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | |
|---|---|
| In re: | ) |
| | ) |
| KATHY K. ROBINSON, | ) Case No. 15-21797 HRT |
| | ) |
| Debtor. | ) Chapter 7 |
| | ) |

**ORDER GRANTING MOTION TO DISMISS**

      This case comes before the Court on *United States Trustee's Motion to Dismiss Chapter 7 Case under 11 U.S.C. § 707(b)(1), (2) and (3)* (docket #19) (the "Motion").

      The United States Trustee ("UST") contends that this chapter 7 case represents an abuse of the Bankruptcy Code under 11 U.S.C. § 707(b).  According to the UST, the presumption of abuse arises under § 707(b)(2) because the majority of Debtor's debts are consumer debts and her disposable income over five years exceeds 25% of her non-priority unsecured debts.  Further, the UST argues that the totality of the circumstances of this case require dismissal under § 707(b)(3), even if the presumption of abuse under § 707(b)(2) does not arise or is rebutted.  The UST argues that the Debtor could easily pay 100% of her indebtedness over the course of a five-year reorganization plan under chapter 13.

I.  BACKGROUND

      Debtor filed her voluntary petition for bankruptcy relief under chapter 7 of the Bankruptcy Code on October 22, 2015.  The Debtor's petition asserted that her debts were primarily non-consumer debts.

      On November 27, 2015, the UST filed a statement, pursuant to 11 U.S.C. § 704(b)(1)(A), indicating that the UST had determined that the Debtor's case should be presumed to be "an abuse under Section 707(b)," ("Ten Day Statement"). The filing of the Ten Day Statement triggered the requirement to either file a statement of declination or a motion to dismiss on or before December 28, 2015.

      On December 22, 2015, the UST filed the instant Motion to dismiss this case under 11 U.S.C. § 707(b).  The UST asserted in the Motion that he disagreed with the Debtor's assertion that her debts were primarily non-consumer debts. The key disagreement being whether the Debtor's student loan debts were properly classified as "consumer" or "non-consumer" debts for the purpose of determining whether the Debtor's case is subject to the "means testing" requirements of § 707(b)(2) and/or the "abuse" standards under § 707(b)(3).

      The Debtor's Schedules D, E and F show debts that total $137,333.00.  However the evidence showed that a debt scheduled by the Debtor as being owed to Litton Loan in the

ORDER GRANTING MOTION TO DISMISS
Case No. 15-21797 HRT

amount of $33,176.00 had been discharged by the creditor pre-petition and was no longer owed as of the petition date. No proof of claim was filed with respect to that scheduled indebtedness. The Debtor testified the scheduled claims of the Internal Revenue Service in the amount of $994.00 had been satisfied by post-petition setoff of the Debtor's refunds for tax years 2014 and 2015. The evidence at hearing also called into question the Debtor's scheduled $1,128.00 priority tax claim in favor of the state of Indiana related to a tax year prior to the Debtor's August 2008 relocation from Indiana to Colorado. The state of Indiana did not file a claim in this case. The total of the claims actually filed in this case is $72,076.93. Included in that total is the student loan claim in the amount of $69,208.82.

The Debtor holds a Bachelor of Science in Nursing ("BSN") degree. She has worked diligently toward that degree goal since 2005 and obtained her BSN in 2016. Along the way she obtained credentials and worked as a Certified Nursing Assistant ("CNA"); a Licensed Practical Nurse ("LPN"); and a Registered Nurse ("RN"). Her steadily improving educational level has led to employment where she utilized her progressively improved levels of skill and has been trusted with progressively higher levels of responsibility. In the process of her advancement, she has earned greater financial rewards as well.

The Debtor financed a portion of her expenses for tuition and books with numerous student loans. Some of the loans have been paid off and the remaining unpaid loans have been consolidated. The outstanding balance of Debtor's student loan debt, as of the petition date, was $69,208.82 according to Proof of Claim number 4-1.

## II.  DISCUSSION

Prior to passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005) ("BAPCPA"), 11 U.S.C. § 707(b) required dismissal of a chapter 7 bankruptcy case of an individual debtor whose debts were primarily consumer debts if the court found that granting relief constituted a substantial abuse of chapter 7. What constituted a substantial abuse was left to the courts to determine. It also provided that "[t]here shall be a presumption in favor of granting the relief requested by the Debtor." 11 U.S.C. § 707(b) (2005). BAPCPA placed more stringent restrictions on access to relief under chapter 7. It eliminated the presumption in favor of granting relief and changed the standard for dismissal from "substantial abuse" to "abuse." It eliminated the prior restriction that a motion under § 707(b) could only be brought by the UST or by the court on its own motion and now provides that a court may entertain a motion under § 707(b) filed by "any party in interest." 11 U.S.C. § 707(b)(1) (2016). BAPCPA added the means test that appears now in § 707(b)(2) and provides elaborate calculations by which a court may determine whether a case is presumptively abusive. Even in cases where there is no presumption of abuse under § 707(b)(2) or a presumption does arise but is rebutted, § 707(b)(3) directs a court to dismiss a chapter 7 case which is filed in bad faith or where the totality of the debtor's circumstances are indicative of abuse.

ORDER GRANTING MOTION TO DISMISS
Case No. 15-21797 HRT

One aspect of § 707(b) that was not amended by BAPCPA is that its provisions never come into play unless a debtor's financial obligations are primarily consumer debts. Thus, in any case where § 707(b) is asserted as a ground for dismissal of an individual chapter 7 case, the threshold issue is whether the debtor owes primarily consumer debts. As more than half of the total debt in this case is student loan debt, the classification of the Debtor's student loan debt as consumer or non-consumer debt is dispositive of whether the UST may proceed under § 707(b).

A. Debtor's Student Loans are Consumer Debts

"The term 'consumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). In its prior cases, the Court has addressed debtors' claims that their student loans were not consumer debts. The Court's most recent case raising that issue was *In re Palmer*, 542 B.R. 289 (Bankr. D. Colo. 2015). In that case, the Court examined the existing case law concerning whether loans obtained for educational purposes were properly classified as consumer debts under the Bankruptcy Code. The Court need not repeat that analysis here.

In *Palmer*, the Court held that the student loans at issue in that case were properly classified as consumer debts because they were not incurred "with a motivation to benefit an existing business or in furtherance of an ongoing job or business requirement." *In re Palmer*, 542 B.R. at 297. The same is true in this case. The evidence established that none of the Debtor's employers required her to upgrade her educational credentials in order to remain employed. None of the education that the Debtor financed with her student loans was required to satisfy educational requirements of the employment she held at the time she enrolled in her course work. In each and every instance, the evidence showed that, with each new degree, the Debtor qualified for new and different employment. The Debtor satisfied her personal goal of professional advancement and enhanced her personal financial prospects. The Debtor did not use the proceeds from her education loans to benefit existing employers or to obtain skills necessary to maintain existing employment. Instead, she sought to obtain skills and credentials that would allow her to seek new and different employment with expanded responsibilities and greater compensation. The Debtor utilized the proceeds from her education loans to satisfy quintessentially personal interests and those obligations fall squarely within the definition of consumer debts under § 101(8).

B. An Unrebutted Presumption of Abuse Arises under 11 U.S.C. § 707(b)(2)

> In considering under paragraph (1) [of 11 U.S.C. § 707(b)] whether the granting of relief would be an abuse of the provisions of . . . chapter [7], the court shall

Page 3 of 6

ORDER GRANTING MOTION TO DISMISS
Case No. 15-21797 HRT

> presume abuse exists if the debtor's current monthly income reduced by the amounts determined under [11 U.S.C. § 707(b)(2)(A)] clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--
> > (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or
> > (II) $12,475.

11 U.S.C. § 707(b)(2)(A)(i)(I). Broadly speaking, abuse of chapter 7 is presumed to exist in those cases where a consumer debtor's current monthly income ("CMI"), reduced by allowable living expenses, is sufficient to fund a reorganization plan under chapter 13 (or chapter 11 in some cases) that pays at least 25% of general unsecured debts over a five-year plan period. In other words, most debtors with the financial wherewithal to pay a substantial portion of their debts through a reorganization plan must seek relief under a reorganization chapter or not at all. Chapter 7 liquidation is not available to those debtors except under unusual circumstances.

The UST's unchallenged calculations reflect the Debtor's CMI "reduced by the amounts determined under [11 U.S.C. § 707(b)(2)(A)] clauses (ii), (iii), and (iv)," *Id*., equals $1,597.00 and, when multiplied by 60, the product is $95,836.00.

After determining the product of the Debtor's CMI multiplied times 60, the next step in the § 707(b)(2) analysis is to determine, under § 707(b)(2)(A)(i)(I) whether 25% of Debtor's nonpriority unsecured debts is greater than $7,475.00. The Debtor's Schedule F (docket #1, pp. 22-27) claims total nonpriority unsecured debts of $113,705.00. The evidence showed the $33,176.00 scheduled as owed to Litton Loan had been fully discharged prior to filing of this case. Excluding that scheduled debt results in a total of Debtor's nonpriority unsecured debts of $80,529.00. Twenty-five percent of that figure is $20,132.25. Because this figure is greater than $7,475.00, the figure determined under § 707(b)(2)(A)(i)(I) is $20,132.25.

Next, § 707(b)(2)(A)(i) instructs the Court to compare the sum determined under subsection (A)(i)(I) and the sum of $12,475.00 stated in subsection (A)(i)(II) to determine the lesser of the two. The lesser is the sum of $12,475.00 appearing in § 707(b)(2)(A)(i)(II).

Finally, under § 707(b)(2)(A)(i), the Court finds that the presumption of abuse exists because the Debtor's CMI multiplied by 60 – $95,836.00 – is not less than $12,475.00.

The Debtor produced no evidence to call the UST's financial analysis into question. Nor did the Debtor's evidence rebut the presumption of abuse that arises under § 707(b)(2). As a consequence, Debtor's case must be dismissed under § 707(b)(1).

ORDER GRANTING MOTION TO DISMISS
Case No. 15-21797 HRT

C.  Cause for Dismissal Exists under 11 U.S.C. § 707(b)(3)

Section 707(b)(3) provides an independent basis for dismissal of a primarily consumer debt case filed under chapter 7 where the evidence shows that debtor filed the case in bad faith or "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse," even if no presumption of abuse arises under § 707(b)(2) or the presumption is rebutted. 11 U.S.C. § 707(b)(3).  The totality of the Debtor's financial circumstances demonstrate that to allow this case to proceed under chapter 7 would represent an abuse of the Bankruptcy Code.

The evidence shows that the $137,333.00 total debt scheduled by the Debtor overstates her debts somewhat.  The UST produced a substitute 1099-C tax form, which reflected that a debt scheduled in the amount of $33,176.00 has been cancelled by the creditor.  After excluding that cancelled debt, the Debtor's debts – secured, priority unsecured and general unsecured – total no more than $104,157.00.  The total of claims filed in this case is $72,076.93.[1]  The Debtor produced no evidence to challenge the UST's calculation of her current monthly income or the UST's conclusion that, over a five year period, her total disposable income, available to fund a chapter 13 plan is over $95,000.00.  That makes this the highly unusual case of a debtor with the ability to propose a plan that would pay 100% of all of the claims filed in this case.

As the Court discussed above, in 2005, BAPCPA added an objective means test standard for determining abuse under § 707(b) and that objective standard is embodied in § 707(b)(2). Prior to the adoption of BAPCPA, courts interpreted the provision in § 707(b) for dismissal of a consumer case for substantial abuse to require a totality of the circumstances analysis.  *See, e.g. In re Stewart*, 175 F.3d 796, 809 (10th Cir. 1999) ("After careful consideration, we adopt the 'totality of the circumstances' standard.").  BAPCPA's adoption of the totality of the circumstances, 11 U.S.C. § 707(b)(3)(B), to determine abuse in consumer cases under § 707(b) preserves the pre-BAPCPA subjective analysis for the determination of substantial abuse.  *In re Crink*, 402 B.R. 159, 169 (Bankr. M.D. N.C. 2009) ("[P]re-BAPCPA cases are still instructive for interpreting Section 707(b)(3), and pre-BAPCPA precedent provides assistance in giving meaning to the phrase 'totality of the circumstances.'") (citing *In re dePellegrini*, 365 B.R. 830, 832 (Bankr. S.D. Ohio 2007); *In re Pfiefer*, 365 B.R. 187, 191 (Bankr. D. Mont. 2007); *In re Lipford*, 397 B.R. 320, 327 (Bankr. M.D. N.C. 2008)).

In assessing the totality of the circumstances under § 707(b), the *Stewart* court held that "ability to pay is a primary factor in determining whether 'substantial abuse' occurred" and that "other relevant or contributing factors, such as unique hardships, must also be examined before dismissing a Chapter 7 petition.  *Stewart*, 175 F.3d at 809.  "[W]here an inability to pay exists,

---

[1] The Internal Revenue Service filed Claim No. 3-1 in the amount of $994.62 ($730.60 priority and $264.02 nonpriority).  The Debtor testified that, post-petition, this debt was set off against her refund due for the 2015 tax year.

ORDER GRANTING MOTION TO DISMISS
Case No. 15-21797 HRT

we believe other factors may nevertheless establish substantial abuse. We recognize the factors articulated by the other courts as instructive, but conclude they are not inclusive of all factors considered. A substantial-abuse analysis must be made on a case-by-case basis." *Id.*

Here, the Debtor has the ability, over a five-year chapter 13 plan, to repay the entirety of her student loan debt along with every other claim filed in the case. The Debtor's ability to pay is a strong indication of abuse under § 707(b). The Court finds no countervailing factors. The Debtor is single and has no dependents. She has obtained a professional nursing education at the bachelors degree level and she has a strong employment history. The Court finds the totality of the Debtor's financial circumstances indicate that granting relief under chapter 7 would constitute an abuse under § 707(b)(3)(B).

### III. CONCLUSION

In accordance with the above discussion, the Court finds that the UST has demonstrated cause exists to dismiss this case under 11 U.S.C. § 707(b). The Debtor has not requested conversion to a case under chapter 13, therefore, it is

**ORDERED** that *United States Trustee's Motion to Dismiss Chapter 7 Case under 11 U.S.C. § 707(b)(1), (2) and (3)* (docket #19) is GRANTED and this case is hereby DISMISSED.

Dated this __26th__ day of October, 2016.

**BY THE COURT:**

Howard R. Tallman, Judge
United States Bankruptcy Court